**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ANTONIO HAWKINS, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Cv. No. 2:21-cv-02067-SHL-atc |
| v. | ) | Cr. No. 2:17-cr-20102-SHL |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER ADDRESSING PENDING MOTIONS, DENYING MOTION PURSUANT TO 28**
**U.S.C. § 2255, DENYING A CERTIFICATE OF APPEALABILITY, CERTIFYING**
**THAT AN APPEAL WOULD NOT**
**BE TAKEN IN GOOD FAITH, AND DENYING LEAVE**
**TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court are the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct
Sentence by a Person in Federal Custody ("§ 2255 Motion"), filed by Movant, Antonio Hawkins,
Bureau of Prisons register number 74816-112, an inmate at the Federal Correctional Institution
Williamsburg in Salters, South Carolina (ECF No. 1); the Response of the United States in
Opposition to Petitioner's Motion Under 28 U.S.C. § 2255 ("Answer") (ECF No. 9); Movant's
Reply to the United States Response in Opposition to Movant's Motion Under 28 U.S.C. § 2255
("Reply") (ECF No. 10); and the following motions filed by Movant: (i) Motion Seeking Leave to
Amend 28 U.S.C. § 2255 With Memorandum Brief in Support ("First Motion for Leave to
Amend") (ECF No. 6); (ii) Motion to Stay Petitioner's Motion to Vacate, Set Aside or Correct
Sentence Pursuant to 28 U.S.C. § 2255 ("Motion to Stay") (ECF No. 11); (iii) Motion for Leave
to File Supplemental and Amended Pleading Pursuant to Fed. R. Civ. P. 15(d) and 15(a) ("Second
Motion for Leave to Amend") (ECF No. 14); and (iv) Motion for Leave to File Supplemental and
Amended Pleading Pursuant to Fed. R. Civ. P. 15(d) and 15(a) ("Third Motion for Leave to

Amend") (ECF No. 15).  For the reasons stated below, the Court **GRANTS** the First Motion for Leave to Amend, **DENIES** the Motion to Stay, **GRANTS IN PART** and **DENIES IN PART** the Second and Third Motions for Leave to Amend, and **DENIES** the § 2255 Motion.

## I.      BACKGROUND AND PROCEDURAL HISTORY

### A.      Criminal Case No. 2:17-cr-20102

On April 20, 2017, a federal grand jury in the Western District of Tennessee returned a five-count indictment against Hawkins.  (Criminal ("Cr.") ECF No. 2.)  The grand jury returned a five-count superseding indictment on February 20, 2018.  (Cr. ECF No. 46.)  The time frame for each count runs from April 2016 through about May 2016.  Count 1 charged that Hawkins transported T.J., a minor, in interstate commerce to engage in a commercial sex act, in violation of 18 U.S.C. §§ 1591(a), (b)(2), and (c).  Count 2 charged that Hawkins transported T.J., a minor, knowing that force, fraud, and coercion would be used to cause her to engage in a commercial sex act, in violation of 18 U.S.C. §§ 1591(a), (b)(1), (b)(2), (c), and 2.  Count 3 charged that Hawkins crossed state lines to promote prostitution, in violation of 18 U.S.C. § 1952(a)(2). Count 4 charged that Hawkins transported J.E. in interstate commerce, with the intent that they engage in prostitution, in violation of 18 U.S.C. §§ 2 and 2421.  Count 5 charged that Hawkins transported T.J., a minor in interstate commerce, with the intent that they engage in prostitution, in violation of 18 U.S.C. §§ 2 and 2423(a).  The Sixth Circuit summarized the factual basis for these charges:

> In the spring of 2016, Hawkins operated a prostitution ring that involved taking several women to various cities in different states, including New Orleans, Louisiana; Houston, Texas; and Memphis, Tennessee, to engage in prostitution. One of the victims was a 15-year-old minor.  Hawkins also beat and threatened the women he was prostituting, including the 15-year-old minor, on multiple occasions, something Hawkins would later brag about on the phone while in jail.

*United States v. Hawkins*, 793 F. App'x 416, 417 (6th Cir. 2020).

2

A jury trial commenced on July 16, 2018.  (Cr. ECF No. 83.)  On July 19, 2018, the jury returned guilty verdicts on all counts.  (Cr. ECF Nos. 88, 89.)  On November 2, 2018, the Court sentenced Hawkins to a term of imprisonment of three hundred sixty (360) months, or thirty years, to be followed by a ten-year period of supervised release.  (Cr. ECF Nos. 103, 104 (sealed).)[1] Judgment was entered on November 2, 2018.  (Cr. ECF No. 105.)  The United States Court of Appeals for the Sixth Circuit affirmed.  *Hawkins*, 793 F. App'x 416.

### B.    Hawkins's § 2255 Motion

On February 1, 2021, Hawkins filed his *pro se* § 2255 Motion, accompanied by a legal memorandum.  (ECF Nos. 1, 1-1.)  The claims presented are not clearly delineated, but appear to be as follows:[2]

1.    "Insufficient evidence on Count 2" (ECF No. 1 at PageID 4; *see also* ECF No. 1-1 at PageID 17–29);

2.    The jury improperly used a general verdict form instead of a special verdict form for Count 2 (ECF Nos. 1 at PageID 4, 1-1 at PageID 28–29); and

3.    Trial counsel was ineffective in failing to file a motion to sever certain counts of the indictment, and appellate counsel was likewise ineffective for failing to raise this issue (ECF Nos. 1 at PageID 5, 1-1 at PageID 29–34).

On March 1, 2021, Hawkins filed his First Motion for Leave to Amend, which asserted the following additional claims:

4.    Trial counsel was ineffective for failing to investigate the case or subject the prosecution's case to adversarial testing (ECF No. 6 at PageID 45–50);

5.    Trial counsel was ineffective in failing to object to the Government's opening argument (*id.* at PageID 51–52);

---

[1] Hawkins was sentenced to concurrent terms of 360 months on Counts 1, 2, and 5, 60 months on Count 3, and 120 months on Count 4.

[2] The Court adopted the Government's list of claims, to which Hawkins has raised no objection.  (ECF No. 9 at PageID 59.)

6.       Trial counsel was ineffective for failing to object to the case agent sitting at the prosecution's table during trial (*id.* at PageID 50); and

7.       Trial counsel was ineffective in failing to disclose Jencks Act material in a timely manner (*id.* at PageID 51).

The Court issued an order on February 3, 2021, in which it denied Hawkins's motion to appoint counsel, and directed the Government to respond.  (ECF No. 4.)  The Government filed its Answer on March 10, 2021.  (ECF No. 9.)  Hawkins filed his Reply on April 14, 2021.  (ECF No. 10.)

Subsequently, Hawkins filed additional motions.  On September 20, 2021, Hawkins filed his Motion to Stay.  (ECF No. 11.)  On October 20, 2021, Hawkins filed his Second Motion for Leave to Amend (ECF No. 14), which presents the following claims:

8.       "Appellate counsel was ineffective for failing to order the jury instructions and which prohibited him from challenging the Court's instructions to the jury on direct appeal" (ECF No. 14-1 at PageID 89–91);

9.       "Trial counsel was ineffective for failing to inform Hawkins of the true risks associated with proceeding to trial versus pleading guilty" (*id.* at PageID 91–92);

10.      "Trial counsel was ineffective for failure to object to the constructive amendment regarding Count Two of the indictment" (*id.* at PageID 92–94).

On February 28, 2022, Hawkins filed his Third Motion for Leave to Amend, which is identical to his Second Motion for Leave to Amend.  (ECF No. 15.)[3]

---

[3] Hawkins acknowledged the filings were the same, and explained that, upon the filing of his Second Motion for Leave to Amend he "wrote to the U.S[.] Court for a docket sheet to see if this was on file.  It was not so I am resending it."  (ECF No. 15-2 at PageID 106.)

### C.   Pending Motions

#### 1.   First Motion for Leave to Amend (ECF No. 6)

Because the First Motion for Leave to Amend was filed before the expiration of the § 2255 limitations period, it is **GRANTED**.  The Government's Answer has addressed those additional claims.

#### 2.   Motion to Stay (ECF No. 11)

Hawkins sought to stay proceedings in this matter for ninety days due to a lockdown at his prison.  The time requested has expired and no action was taken in this matter during that time. The Motion to Stay is **DENIED** as moot.

#### 3.   Second and Third Motions for Leave to Amend (ECF Nos. 14 & 15)

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires."  A court can deny leave to amend where there has been undue delay and where the amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Twenty-eight U.S.C. § 2255(f) provides that "[a] 1-year period of limitation shall apply to a motion under this section."  In most cases, the § 2255 limitations period begins to run on "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  "[F]or purposes of collateral attack, a conviction becomes final at the conclusion of direct review."  *Johnson v. United States*, 246 F.3d 655, 657 (6th Cir. 2001).  Here, the Sixth Circuit's decision on direct appeal issued on February 11, 2020, and his conviction became final ninety days later on May 11, 2020, when the time in which to file a petition for a writ of certiorari with the United States Supreme Court expired.  *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009).  The limitations period began to run the next day, and it expired one year later, on May 12, 2021.  Although the

original § 2255 Motion and the First Motion for Leave to Amend are timely, the Second and Third Motions for Leave to Amend are not, as Hawkins acknowledges.  (ECF Nos. 14 at PageID 86–87, 15 at PageID 97–98.)

Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."   In the habeas context, the relevant "conduct, transaction, or occurrence" is not the inmate's trial, conviction, and sentence.  *Mayle v. Felix*, 545 U.S. 644, 661–63 (2005).  Instead, "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Id.* at 650.  However, "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order."  *Id.* at 664.

In *Watkins v. Deangelo-Kipp*, 854 F.3d 846 (6th Cir. 2017), the Court of Appeals held that relation back was not appropriate when the original habeas petition alleged that trial counsel was ineffective in failing to investigate and raise an unspecified defense and the amendment alleged that trial counsel was ineffective in failing to seek an additional psychiatric examination.  The Court reasoned that "[c]ounsel's conduct in investigating before trial and presenting a defense to the jury during trial is a distinct 'episode' from counsel's conduct in not requesting that the judge order a fifth psychiatric evaluation during trial."  *Id.* at 850–51.

Here, Claim 8, which addresses appellate counsel's failure to order the jury instructions, relates back to the original § 2255 Motion, which complained, as part of Claim 1, that the jury instructions were omitted from the trial transcript and noted that appellate counsel failed to raise

the issue.  (ECF No. 1 at PageID 4.)  Therefore, Claim 8 relates back to the original § 2255 Motion.

Leave to amend is **GRANTED** as to this claim.  No response from the Government is required.

Claim 9, which addresses counsel's advice on whether to plead guilty, is an entirely different claim than every other claim in the original or First Amended § 2255 Motion.  Leave to Amend is **DENIED** as to Claim 9.

Claim 10, which addresses trial counsel's failure to object to the purported constructive amendment of the indictment, is related to Claim 2, the use of a general verdict form on Count 2.  Both counts arise from the charge conference at trial and the jury instruction on Count 2.  Therefore, leave to amend is **GRANTED** as to Count 2.  No response by the Government is required to this claim.

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."  *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).  Movant has the burden of proving that he is entitled to relief by a preponderance of the evidence.  *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

II.     **ANALYSIS**

A.      **Use of a General Verdict on Count 2 (Claim 2)[4]**

Claim 2 argues that the Court should have used a special verdict form for Count 2.  (ECF No. 1 at PageID 7.)[5]  Hawkins fails to explain what the form should have looked like.

The Government argues that Claim 2 has been procedurally defaulted.  (ECF No. 9 at PageID 60.)  The Court agrees.  "[A] § 2255 motion 'is not a substitute for a direct appeal.'"  *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007)).  "Defendants must assert their claims in the ordinary course of trial and direct appeal."  *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously.  *El-Nobani v. United States*, 287 F.3d 417, 420–21 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698–99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors).  Hawkins's challenge to the use of a general verdict form on Count 2 was available to him on direct appeal and, therefore, it ordinarily would be barred by procedural default.  *Harris v. United States*, 993 F.2d 1546, 1993 WL 169057, at *1 (6th Cir. May 18, 1993) (unpublished table decision) ("the claim of erroneous jury instructions . . . is not ordinarily cognizable on collateral review"); *DiPiazza v. United States*, 471 F.2d 719, 720 (6th Cir. 1973).  Hawkins argues that his default was due to the ineffective assistance of appellate

---

[4] In the interest of clarity, the Court will address Claim 2 before Claim 1.

[5] Claim 2 is intertwined with Claims 8 (appellate counsel's failure to challenge jury instructions) and 10 (trial counsel's failure to challenge a constructive amendment of the indictment).

counsel.  (ECF No. 10 at PageID 69–70.)  That argument not only does not address the procedural default argued here, but it is also meritless.

"In general, special verdicts are not favored and may in fact be more productive of confusion than of clarity."  *United States v. Wilson*, 629 F.2d 439, 444 (6th Cir. 1980) (footnote and internal quotation marks omitted).  "[U]se of a special verdict form is a matter of the district court's discretion to be determined on the facts of each case."  *United States v. Reed*, 147 F.3d 1178, 1181 (6th Cir. 1998) (footnote omitted).

Count 2 of the superseding indictment charged Hawkins with sex trafficking of a minor by force, fraud, or coercion.  Eighteen U.S.C. §§ 1591(b)(1) and (2) are sentencing provisions.  If the offense was effected by means of force, threats of force, fraud, or coercion, or by any combination of such means, the offense is punishable by "imprisonment for any term of years not less than 15 or for life."  18 U.S.C. § 1591(b)(1).  "[I]f the offense was not so effected," and the victim was at least fourteen years old but less than eighteen, the offense is punishable by "imprisonment for not less than 10 years or for life."  *Id.* § 1591(b)(2).  Here, the superseding indictment charged Hawkins in Count 2 under both 18 U.S.C. §§ 1591(b)(1) and (2).  Thus, the Government had to prove **both** that "the offense was effected by means of force, threats of force, fraud, or coercion" **and** that Hawkins knew or recklessly disregarded the fact that T.J. was between the ages of 14 and 18.[6]

At the charge conference, defense counsel suggested that a special verdict form might be appropriate, likening the situation to a drug case in which a special verdict form might be used to determine drug quantities.  (Cr. ECF No. 127 at PageID 1287–89 (sealed).)  However, this argument is not supported by Sixth Circuit precedent, which does not require the use of special

---

[6] It also means that, if the jury acquitted Hawkins on Count 1, it necessarily would have to acquit him on Count 2 even if it believed that he engaged in sex trafficking by means of force, threats of force, fraud, or coercion.

verdict forms when determining drug quantities.  *See Ruffin v. United States*, No. 21-4171, 2022 WL 18862485, at *2 (6th Cir. June 28, 2022).  The court held in *Ruffin* that a special verdict form was not required where the indictment charged a specific drug quantity and the district court "repeated the precise language of the indictment and the elements of the charged crime" and instructed the jury that they must find that the government had proved all those elements beyond a reasonable doubt.  *Id.*

Here, as in *Ruffin*, the Court instructed the jury on the elements of the offense, including the fact that the jury must find both that T.J. was under eighteen years old and that Hawkins "knew or recklessly disregarded the fact that force, threats of force, fraud or coercion would be used to cause T.J. to engage in a commercial sex act."  (Cr. ECF No. 87 at PageID 243–44.)  The jury instructions on Count 2 were taken from the Sixth Circuit Pattern Jury Instructions 16.12 (sex trafficking) and 8.03B (the jury need not be unanimous as to the means by which the offense was committed).  (*Id.* at PageID 243–47.)  The Court ultimately accepted the Government's argument that a special verdict form was not required because the finding of force, fraud, and coercion is an element of the offense.  (Cr. ECF No. 127 at PageID 1293 (sealed).)  Hawkins fails to demonstrate that, if only counsel had raised the issue on direct appeal, there is a reasonable probability that the Court of Appeals would have ruled in his favor.  Thus, no prejudice has been shown. Claim 2 is **DISMISSED**.

## B.     Sufficiency of the Evidence (Claim 1)[7]

Claim 1 argues that the evidence was insufficient to support Hawkins's conviction on Count 2.  (ECF No. 1 at PageID 4.)  Specifically, Hawkins contends that there was insufficient

---

[7] Although Claim 1 also mentions counsel's failure to have the jury instructions transcribed, that issue is not properly considered in assessing the sufficiency of the evidence.  It will be addressed in Claim 8.

evidence to prove that T.J. was trafficked through force, fraud, and coercion.  Instead, he says, she lied about her age and willingly engaged in prostitution.  Although Hawkins had a physical altercation with J.E., an adult, he contends that no force or coercion was exercised against T.J. Hawkins concedes that T.J. testified that Hawkins hit her and threatened her, but, he argues, no other witness corroborated that testimony.  (ECF No. 1-1 at PageID 17–29.)

As the Government argues, Claim 1 ordinarily would be barred by procedural default because it could have been raised on direct appeal.  (ECF No. 9 at PageID 60.)  Challenges to the sufficiency of the evidence ordinarily cannot be raised in a § 2255 motion.  *United States v. Shields*, 291 F.2d 798, 799 (6th Cir. 1961); *Valeriano v. United States*, No. 1:15-cv-01278-JDB-egb, 2019 WL 1271030, at *9 (W.D. Tenn. Mar. 19, 2019).  Hawkins contends that his default was due to the ineffective assistance of appellate counsel (ECF No. 10 at PageID 69–70), which fails both procedurally and substantively.

In *Jackson v. Virginia*, 443 U.S. 307, 324 (1979), the Supreme Court held that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  In evaluating a *Jackson* claim, a federal court should review the record "in the light most favorable to the prosecution." *Id.*  The State is not required "to rule out every hypothesis except that of guilt beyond a reasonable doubt . . . ."  *Id.* at 326.  "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Id.*  That standard is applicable to federal convictions.  *United States v. Shelton*,

50 F. App'x 756, 756 (6th Cir. 2002) (per curiam); *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994).

"[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (citation and internal quotation marks omitted). Credibility determinations are reserved for the trier of fact and are "generally beyond the scope of habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 918 (6th Cir. 2012) (citation, internal quotation marks and alteration omitted).

Here, the evidence was sufficient for the jury to conclude that force, threats of force, fraud, or coercion would be used to cause T.J. to engage in a commercial sex act. The Court of Appeals found that "Hawkins also beat and threatened the women he was prostituting, including the 15-year-old minor, on multiple occasions." *Hawkins*, 793 F. App'x at 417. T.J. testified that Hawkins yelled at her and struck her when he learned she had told the other prostitutes and his sister how old she was. (Cr. ECF No. 126 at PageID 1212–14 (sealed).) T.J. also recounted an incident when Hawkins hit her in the face. (*Id.* at PageID 1214.) Hawkins also threatened to hit T.J. (*id.* at PageID 1217–18), and she saw Hawkins hit two of the other prostitutes. (*Id.* at PageID 1216.) On one occasion, Hawkins threatened to burn one of the prostitutes with an iron. (*Id.* at PageID 1217.) T.J. testified that there were times when she did not feel like working but "I didn't have no choice." (*Id.* at PageID 1215.) When T.J. told Hawkins that she wanted to leave, he told her that she first had to make enough money to pay for her bus ticket. (*Id.*) This evidence is more than sufficient to demonstrate force, fraud, or coercion. Claim 1 is **DISMISSED**.

### C.       Ineffective Assistance of Counsel (Claims 3–8 & 10)

Hawkins's remaining claims allege that his trial and appellate attorneys were ineffective. A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which require a showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense."   To demonstrate deficient performance, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.   The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks and citations omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome."   *Id.*   "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding.   Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   *Harrington*, 562 U.S. at 104 (internal quotation marks and citation omitted); *see also id.* at 111–12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . .   The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But

*Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail.  Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").  Each allegation of ineffective assistance of counsel is addressed below.

### 1.   Failure to File a Motion to Sever (Claim 3)

In Claim 3, Hawkins alleges that his trial counsel was ineffective in failing to file a motion to sever certain counts, and his appellate counsel was ineffective in failing to raise the issue. Hawkins has not been consistent about the factual basis for this claim.  On the one hand, he argues that counsel should have moved to sever Count 5 from Counts 1 through 4.  (ECF No. 1-1 at PageID 29.)  Elsewhere, however, he says that Counts 1, 2, and 5 should have been severed from Counts 3 and 4.  (*Id.* at PageID 32.)  In neither case, however, has he explained his position.

Rule 8(a) of the Federal Rules of Criminal Procedure provides that "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan."  Rule 8(a) is to be construed broadly "to promote the goals of trial convenience and judicial economy."  *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001) (internal quotation marks and citation omitted); *see also United States v. Wirsig*, 719 F.2d 859, 862 (6th Cir. 1983) (same).  "When the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate."  *United States v. Anderson*, 642 F.2d 281, 284 (6th Cir. 1981) (citation omitted).  "To the extent that it is consistent with providing the defendant with a fair trial, the Rule is to be construed liberally to promote the goals of trial convenience and judicial efficiency."  *Wirsig*, 719 F.3d at 862–63; *see also United States v. Gough*, No. 97-5617, 1998 WL

183474, at *6 (6th Cir. Mar. 15, 1999) (per curiam) (same). "Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment." *United States v. Chavis*, 296 F.3d 450, 456–57 (6th Cir. 2002). "Joinder is proper when the evidence of the counts is intertwined." *Thomas v. United States*, 849 F.3d 669, 675 (6th Cir. 2017) (citation omitted).

The superseding indictment charged Hawkins with five sex-trafficking crimes during roughly a one-month period. Count 3 charged Hawkins with crossing state lines to promote prostitution. Counts 1, 2, and 5 involve a single minor victim, T.J. Count 4 involved an adult victim, J.E. The proof on these counts is overlapping. The evidence that T.J. was trafficked in interstate commerce is relevant to Count 3, interstate sex trafficking. The evidence of Hawkins's altercation with another prostitute and threat to burn a prostitute with an iron, both of which occurred in T.J.'s presence, is relevant to show the force, fraud, and coercion required to convict Hawkins of Count 2. Joinder is supported because these counts are "logically related" and involve "overlapping proof." *See Anderson*, 642 F.2d at 284.

Under the Federal Rules of Criminal Procedure, a court may order separate trials of counts "[i]f the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant." Fed. R. Crim. P. 14(a). "To prevail on a request for severance the defendant must show compelling, specific, and actual prejudice." *Thomas*, 849 F.3d at 675. "A spillover of evidence between counts does not require severance unless there is substantial, undue, or compelling prejudice." *Id.* at 676 (citation and internal quotation marks omitted). Misjoinder of offenses does not warrant relief if the Government establishes that the error was harmless, meaning that the misjoinder did not have a substantial and injurious effect or influence in determining the jury's verdict. *United States v. Locklear*, 631 F.3d 364, 369 (6th Cir. 2011). Hawkins has not explained how the joinder of the offenses for trial unfairly prejudiced him. He does not argue, for example, that the jury was more

15

likely to convict him on the offense against the adult victim because of evidence that there was also a minor victim.

Hawkins has not established that his attorney performed deficiently or that he suffered prejudice, as to this claim.  Claim 3 is without merit and is **DISMISSED**.

### 2.    Counsel's Failure to Defend (Claim 4)

In Claim 4, Hawkins complains that his attorney failed to investigate the case or subject the prosecution's case to adversarial testing.  Specifically, Hawkins asserts that his attorney failed to conduct an investigation, failed to prepare for trial, and gave an inadequate opening statement. Counsel supposedly did not prepare any witnesses, failed to obtain certain phone records, and did not have a theory of defense.  Some of the witnesses Hawkins wanted his attorney to call ultimately testified for the Government.  (ECF No. 6 at PageID 45–50.)

Hawkins's argument is entirely lacking in factual specificity.  Counsel gave a standard opening statement in which he stressed the presumption of innocence, the Government's burden of proof, the fact that witnesses made prior inconsistent statements, and gaps in the evidence. Counsel emphasized what he contended was weak evidence of threats and coercion.  (Cr. ECF No. 124 at PageID 770–775 (sealed).)  Hawkins does not state what more he contends his attorney should have said.  He also has not identified and presented the evidence and witnesses he contends counsel should have discovered.  To the extent that some of Hawkins's proposed witnesses were called by the Government, counsel had the opportunity to cross-examine them, and counsel took advantage of that opportunity.  Hawkins has not presented what he contends should have been the theory of defense, and he has not established that, if only counsel had done so, there is a reasonable probability that the outcome of the trial would have been different.  Claim 4 is without merit and is **DISMISSED**.

###   3.   Counsel's Failure to Object to the Government's Opening Argument (Claim 5)

In Claim 5, Hawkins complains that his attorney failed to object to the Government's opening argument, in which "the prosecutor falsely painted a picture in the jury['s] mind as if [Hawkins] was the one who convinced T.J. into prostitution." (ECF No. 6 at PageID 51.) Hawkins refers to the Government's description of how T.J. met Hawkins in Houston and subsequently discussed with her going to work for him as a prostitute. (Cr. ECF No. 124 at PageID 764–65 (sealed).) While the Government did not contend that this was the first time T.J. had engaged in prostitution, the proof supported the jury's conclusion that Hawkins "knowingly recruited, enticed, harbored, transported, provided, obtained or maintained" her to do so. Thus, this argument has no merit.

At trial, T.J. testified that, when she first got to Houston, she stayed with "pimps." (Cr. ECF No. 126 at PageID 1196 (sealed).) T.J. stated that Hawkins brought her to a street where she engaged in prostitution and that Hawkins knew at the time that she was fifteen years old. (*Id.* at PageID 1200–03.) T.J. (*See* Cr. ECF No. 87 at PageID 240.) To convict Hawkins on Count 5, the Government had to prove only that Hawkins knowingly transported T.J. in interstate commerce with the intent that she engage in prostitution. (*Id.* at PageID 253.) The fact that T.J. might have engaged in prostitution before she met Hawkins has no bearing on the charges against him. In fact, the Government filed a successful motion *in limine*, based on Rule 412 of the Federal Rules of Evidence, to preclude questions about T.J.'s prior sexual activity. (Cr. ECF Nos. 49, 83, 124 at PageID 727 (sealed).)

Had counsel objected to that portion of the Government's opening statement, the objection by counsel would have been denied because the statement was consistent with the evidence. In addition, Hawkins has not established prejudice. Claim 5 is **DISMISSED**.

### 4.      Counsel's Failure to Object to the Case Agent (Claim 6)

In Claim 6, Hawkins complains that his attorney failed to object to the presence of the case agent, who sat with the prosecutors at trial.  (ECF No. 6 at PageID 50.)  As the Government points out, however, that objection would have been futile.  (ECF No. 9 at PageID 65–66.)  Rule 615(b) of the Federal Rules of Evidence precludes the court from excluding "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney."  It is common practice for case agents to attend trials.  Claim 6 is without merit and is **DISMISSED**.

### 5.      Untimely Disclosure of Jencks Evidence (Claim 7)

In Claim 7, Hawkins complains that his attorney failed to object to the Government's untimely disclosure of Jencks material, until shortly before the witness testified.  No specifics are provided.  (ECF No. 6 at PageID 51.)  As the Government points out, however, the Jencks Act, 18 U.S.C. § 3500(a), requires only that any such statements be produced after "said witness has testified on direct examination in the trial of the case."  (ECF No. 9 at PageID 66; *see also United States v. Rodriguez*, Criminal Action No. 3:18-cr-46-RGJ, 2022 WL 3354073, at *9 (W.D. Ky. Aug. 12, 2022) ("The Jencks Act prohibits a court from ordering disclosure of Jencks material before the witness has testified in direct examination.").)  The timing of the disclosure is not altered even when the statement contains potentially exculpatory or impeachment material.  *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002).  Had counsel sought to compel earlier production of any such statements, it would have been denied.  Claim 7 is **DISMISSED**.

### 6.      Failure to Transcribe the Jury Instructions (Claim 8)

Claim 8 complains that appellate counsel failed to order that the jury instructions be transcribed, making it impossible to challenge those instructions on direct appeal.  (ECF No. 14-1

at PageID 89.)  Although Hawkins's precise objection to the instructions is not clear, he seems to object to Sixth Circuit Pattern Jury Instruction 16.12 as it relates to Count 2.  Specifically, Hawkins contends that the force, fraud, and coercion element is not satisfied by evidence of acts taken against other persons.

First, Hawkins is incorrect that the jury instructions were not part of the record on appeal.  They are found at Cr. ECF No. 87.  Had counsel wanted to appeal a jury instruction, he had the means to do so.

Hawkins also has not demonstrated a reasonable likelihood that any appeal would have been successful.  As previously stated, *see supra* p. 10, the jury instructions were taken from the Sixth Circuit Pattern Jury Instructions.  Hawkins cited no authority for the proposition that force, threats, and coercion within the meaning of 18 U.S.C. § 1591(b)(1) must be directed only at the victim.  Claim 8 is without merit and is **DISMISSED**.

### 7.   Failure to Object to the Constructive Amendment of the Indictment (Claim 10)

In Claim 10, Hawkins complains that his attorney failed to object to the constructive amendment of the indictment on Count 2.  Specifically, Hawkins objects to the fact that the superseding indictment charged him with violating both 18 U.S.C. §§ 1591(b)(1) and (b)(2).  He also complains that the indictment did not allege that he had had a reasonable opportunity to observe T.J., which was required to establish that he recklessly disregarded evidence that she was a minor.  (ECF No. 14-1 at PageID 92–94.)

However, although

> The Fifth Amendment shields a defendant from prosecution on charges that are not made in the indictment against him. . . .  Thus, . . . a district court cannot constructively amend an indictment through its jury instructions and verdict forms.  A constructive amendment occurs when the instructions and verdict form modify essential elements of the offense

charged such that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment.

*United States v. Kettles*, 970 F.3d 637, 648 (6th Cir. 2020) (internal quotation marks and citations omitted).

Hawkins has not alleged a constructive amendment of the indictment at trial. As previously discussed, *see supra* p. 9, the superseding indictment charged Hawkins in Count 2 under both 18 U.S.C. §§ 1591(b)(1) and 1591(b)(2). Thus, the Government had to prove **both** that "the offense was effected by means of force, threats or force, fraud, or coercion" **and** that Hawkins knew or recklessly disregarded the fact that T.J. was between the ages of 14 and 18. The evidence at trial was entirely consistent with the indictment.

Hawkins, relying on 18 U.S.C. § 1591(c), contends that the indictment did not allege that Hawkins had a reasonable opportunity to observe T.J. However, the reasonable opportunity to observe is not an element of the offense. Instead, it provides a means to satisfy the scienter requirement of 18 U.S.C. § 1591(a)(1). The failure to allege the "reasonable opportunity to observe" in an indictment is not a constructive amendment. *United States v. Davis*, 711 F. App'x 254, 257 (6th Cir. 2017). Moreover, Counts 1 and 2 of Hawkins's indictment expressly charged him with violating 18 U.S.C. § 1591(c), putting him on notice that the Government would argue that he had had a reasonable opportunity to observe T.J. *Id.* at n.2.

As Hawkins has not established deficient performance or prejudice, Claim 10 is without merit and is **DISMISSED**.

\* \* \* \*

For the reasons previously stated, the Court **DENIES** the § 2255 Motion. The § 2255 Motion is **DISMISSED WITH PREJUDICE**. Judgment shall be entered for the United States.

## IV.    APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).  The COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2) & (3).  No § 2255 movant may appeal without this certificate.

A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).

> Where a district court has rejected a constitutional claim on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . .  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. . . .

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect."  *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).  "To put it simply, a claim does not merit a certificate unless *every independent reason to deny the claim is reasonably debatable*."  *Id.*; *see also id.* ("Again, a certificate is improper if *any* outcome-determinative issue is not reasonably debatable.").

The issues raised in Movant's § 2255 Motion are meritless for the reasons previously stated.  Because any appeal by Movant on the issues raised does not deserve attention, the Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions.  *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).  *Kincade*, 117 F.3d at 952.  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *See* Fed. R. App. P. 24(a) (4)–(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is **DENIED**.[8]

**IT IS SO ORDERED**, this 4th day of March, 2024.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

---

[8] If Movant files a notice of appeal, he must also pay the full $605 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.